[Civ. No. 1530. Fifth Dist. Nov. 1, 1972.]

WILLIAM H. PETTITT et al., Plaintiffs and Appellants, v. HERBERT LEVY, JR., et al., Defendants and Respondents.

## COUNSEL

Leonard C. Hoar, Jr., for Plaintiffs and Appellants.

Andrews; Andrews, Thaxter, Jones & Baxter, James F. Thaxter and Leonard E. Deal for Defendants and Respondents.

## OPINION

**BROWN (G. A.), J.**—The disposition of this lawsuit depends upon the application of the absolute privilege stated in Civil Code section 47, subdivision 2,[1] to the factual allegations in the first amended complaint. The trial court determined the privilege to be applicable and sustained

---

[1]Civil Code section 47, subdivision 2, provides in part as follows:
"A privileged publication or broadcast is one made—
"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .
"2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law; . . ."

defendants' demurrer to the first amended complaint without leave to amend.[2]

■ For the purpose of testing the question of law raised, all material issuable facts properly pleaded in the complaint are assumed to be true. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 800, p. 2413.)

Plaintiffs were the owners of the real property and buildings located thereon at 3115-3117 North Wilson Avenue, Fresno. In 1964 they learned 3117 North Wilson had a nonconforming right of use for C-1 retail commercial. In August 1964 they sought and obtained a building permit from the city for the purpose of altering the premises, both at 3115 and 3117 North Wilson, for use as a beauty salon, and thereafter invested approximately $20,000 in the remodeling-conversion job. The permit for 3115 North Wilson was apparently issued in error.

On May 11, 1967, a Fresno city inspector ascertained that the two buildings had been connected and gave plaintiffs five days' notice to obtain a permit for 3115 North Wilson. To do so it was necessary that they obtain a C-1 variance for that address. They made application for such a zoning variance to the Fresno Planning Commission and the City Council. The request was finally denied by the council on January 2, 1969, and plaintiffs were directed to reconvert the premises at 3115 North Wilson to residential use.

The amended complaint alleges four causes of action for damages sounding in (1) fraud, (2) negligent misrepresentation, (3) negligence, and (4) intentional infliction of mental distress. The amended complaint further alleges that between June 1967 and January 2, 1969, the defendants conspired together and wilfully entered into a scheme to injure plaintiffs and to drive plaintiffs out of their beauty salon·business or, in the alternative, to wrongfully deprive plaintiffs of the use of 3115 North Wilson as a part of said business, "by initiating and pursuing action against plaintiffs before the government of the City of Fresno." The amended complaint continues, ". . . that defendants, . . . in pursuance of said conspiracy and scheme did the acts and things herein alleged and all of said acts and things were participated in and done by each and all of the defendants, . . . or by one or more of them as steps in said conspiracy and by unlawful means did prepare and submit to defendant City of Fresno a false or forged building permit pertaining to plaintiff's business premises, which permit omitted the street address of 3115 N. Wilson as contained in the

---

[2]Plaintiffs made no contention in the trial court nor in this court that the trial court abused its discretion in denying leave to amend a second time. Plaintiffs rely upon the facts as alleged and the inapplicability of the privilege.

original building permit. Defendants, . . . or one or more of them in pursuit of said conspiracy, did submit said forged building permit as a copy of the original and true building permit to the Fresno City Planning Commission and the Fresno City Council in order to deny plaintiffs the use of 3115 N. Wilson as a part of plaintiff's beauty salon."

Each of the four counts incorporates these allegations by reference and by necessary language variation to fit the theory of the particular count makes these same allegations the basis of the relief sought.

The crucial allegations, therefore, upon which all counts are based and the only acts alleged to have been committed pursuant to the alleged conspiracy are the preparation and submission of a false or forged building permit to the City of Fresno, its officers and planning commission.

Furthermore, each of the causes of action alleges the damages to have been proximately caused by the city having considered said false or forged permit resulting in the denial of a zoning variance and the destruction of plaintiffs' business.

A succinct summary of the public policy supporting the privilege contained in Civil Code section 47, subdivision 2, is set forth in *Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, at page 641 [99 Cal.Rptr. 393]: "Underlying the recognition of this privilege is the important public policy of affording the utmost freedom of access to the courts. [Citations.] The privilege is accorded not only to parties but to witnesses, even where their testimony is allegedly perjured and malicious. [Citations.] 'The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.' [Citation.]"

The privilege is an absolute one because it protects publications made with actual malice or with the intent to do harm. (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405]; *Rader* v. *Thrasher* (1972) 22 Cal.App.3d 883, 887 [99 Cal.Rptr. 670].)

Any publication made in a city planning commission or city council proceedings is within the protection of that section though the proceedings are not strictly judicial. (*Whelan* v. *Wolford* (1958) 164 Cal.App.2d 689 [331 P.2d 86]; *Harnish* v. *Smith* (1956) 138 Cal.App.2d 307 [291 P.2d 532].) The privilege extends to persons who are not parties but who are in the position of the defendants herein, being witnesses or interested members of the public desiring to oppose the granting of a variance to plaintiffs. (*Rader* v. *Thrasher, supra,* 22 Cal.App.3d 883, 888.)

■ Although the application thereof usually arises in the context of a defamation action, it is equally applicable to other actions, with the sole exception of an action for malicious prosecution. (*Albertson* v. *Raboff, supra,* 46 Cal.2d 375, 382-384; *Thornton* v. *Rhoden* (1966) 245 Cal. App.2d 80, 99 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626, 640-641.)

■ The absolute privilege attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of the litigation even though published outside the courtroom and no function of the court or its officers is involved. The publication need not be pertinent, relevant or material in a technical sense to any issue if it has some connection or relation to the proceedings. (*Thornton* v.`Rhoden, supra,* 245 Cal.App.2d 80, 90; *Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 865 [100 Cal.Rptr. 656].) ■ Since plaintiffs alleged the forged permit caused the denial of the zoning variance, ipso facto, the forgery alleged meets this relationship test.

Appellants assert that the criminal act of forging the permit destroys the privilege. The California precedents, however, point toward a contrary conclusion. An early case held that a perjured statement in a complaint does not destroy the privilege, the remedy being a criminal action for perjury. (*Ball* v. *Rawles* (1892) 93 Cal. 222 [28 P. 937].) Preparing and presenting false documents is equivalent to the preparation and presentation of false testimony. Since there is no exception to the privilege when the testimony is perjured, by a parity of reasoning no exception should apply to the preparation and presentation of false documentary evidence. (*Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804, 808 [42 Cal.Rptr. 314]; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d at p. 641.)

Appellants point to the language of *Albertson* v. *Raboff, supra,* 46 Cal.2d 375, at page 380, to the effect that the privilege applies to any publication that is "permitted" by law, as inferentially denying the privilege to false documents. However, in the light of cases decided before and after *Albertson,* it is apparent that the court in that case intended the language used to apply merely to the category of evidence or documents. The court did not intend to require that the evidence or documents be accurate or truthful before the privilege attached. To hold otherwise would be inconsistent with the general public purpose of the privilege to encourage the utmost freedom of access to the courts and quasi-judicial bodies. (*Kachig* v. *Boothe, supra,* 22 Cal.App.3d at p. 641.)

Appellants also argue that the conspiracy to forge and actual forgery of the building permit took place prior to and outside of any meeting of

the city planning commission or city council and therefore did not occur "in any proceeding." This contention requires us to determine if the protective mantle of Civil Code section 47, subdivision 2, extends to the activities and conduct alleged, separated as they were in time and space from the city forums.

In *Albertson* v. *Raboff*, *supra*, 46 Cal.2d 375, the court held the recordation of a lis pendens is entitled to the privilege against the contention that such recordation was merely a private act outside the course of judicial proceedings. In the course of that holding the court said, at pages 380-381: "It is our opinion that the privilege applies to any publication, such as the recordation of a notice of *lis pendens*, that is required (e.g., Code Civ. Proc., § 749) or permitted (e.g., Code Civ. Proc., § 409) by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. [Citation.] Thus, it is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits." The Restatement of Torts extends the privilege to prehearing preparation. (Rest., Torts, §§ 586, com. a, 587, coms. a and b, 588, coms. a and b.)

In *Bernstein* v. *Alameda etc. Med. Assn.* (1956) 139 Cal.App.2d 241 [293 P.2d 862], the court held that a medical report prepared at the request of a private litigant and later used in a judicial proceedings fell within the privilege.

*Ascherman* v. *Natanson*, *supra*, 23 Cal.App.3d 861, was an action for slander by one physician against another based upon statements made by the defendant-doctor during an interview with an attorney who was representing a hospital district. The interview was part of the attorney's preparation for a contemplated administrative hearing by the hospital district to review a rejection of the plaintiff's application for staff privileges at the hospital. In holding the statements absolutely privileged, the court said, at page 865: "It is also well settled that the absolute privilege in both judicial and quasi-judicial proceedings extends to preliminary conversations and interviews between a prospective witness and an attorney if they are in some way related to or connected with a pending or contemplated action. [Citations.]"

To accomplish the purpose of judicial or quasi-judicial proceedings, it is obvious that the parties or persons interested must confer and must marshal their evidence for presentation at the hearing. The right of private parties to combine and make presentations to an official meeting and, as a necessary incident thereto, to prepare materials to be presented is a fundamental

adjunct to the right of access to judicial and quasi-judicial proceedings. To make such preparations and presentations effective, there must be an open channel of communication between the persons interested and the forum, unchilled by the thought of subsequent judicial action against such participants; provided always, of course, that such preliminary meetings, conduct and activities are directed toward the achievement of the objects of the litigation or other proceedings. (Cf. *Washer* v. *Bank of America* (1943) 21 Cal.2d 822, 831-832 [136 P.2d 297, 155 A.L.R. 1338].) As we have pointed out, the pleadings herein precisely direct and channel all of the preliminary activities and conduct toward the proceedings before the Fresno Planning Commission and City Council.

We emphasize that the amended complaint herein does not allege, nor have appellants contended at any stage of this case, that there was any publication or use of the false or forged permit other than in connection with the proceedings before the Fresno City Planning Commission and City Council. Nor do they allege that any damage resulted other than by the denial of a zoning variance to them by reason of its use before those bodies. Our decision herein is necessarily limited to those alleged facts.

Lastly, contrary to appellants' contention, the allegation of conspiracy among the defendants to do the privileged acts does not remove the privilege. In California it is well settled that: "Where a complaint charges a conspiracy and the commission of a wrongful act, the only significance of the conspiracy charge is that each member may be held responsible as a joint tortfeasor, regardless of whether or not he directly participated in the act. [Citations.] A conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. It requires a determination of whether the pleaded facts show something was done which, without the conspiracy would give rise to a right of action. [Citations.]" (*Widdows* v. *Koch* (1968) 263 Cal.App.2d 228, at p. 234 [69 Cal.Rptr. 464].) The only acts alleged to have been done pursuant to the conspiracy are the preparation and submission of a false or forged building permit to the City of Fresno. Because we have held those acts are privileged under Civil Code section 47. subdivision 2, the allegation of conspiracy adds nothing and does not vitiate the privilege. (*Thornton* v. *Rhoden, supra,* 245 Cal.App.2d 80, 84, 93; *Kachig* v. *Boothe, supra,* 22 Cal.App.3d 626, 630-631, 641.)

Appellants rely upon *Clark* v. *Lesher* (1951) 106 Cal.App.2d 403 [235 P.2d 71] as authority for their position that the allegations of conspiracy eliminate the protection of the privilege. In that case the court

did state, at page 409: " 'Where parties in pursuance of a conspiracy or combination for that purpose, fraudulently make use of legal proceedings to injure another, an action lies against them, at the suit of the person injured, to recover damages sustained.' " Only authority from other jurisdictions is cited in support thereof. Although that statement may be construed to suggest that an action for conspiracy may be maintained independent of a substantive wrong committed pursuant to a conspiracy, upon closer analysis it appears the *Clark* case factually alleged a conspiracy to commit a fraud. Insofar as the language may imply that a conspiracy in and of itself, independent of a civil wrong, may give rise to liability, the holding is inconsistent with established California law. (See *Widdows* v. *Koch, supra*, 263 Cal.App.2d 228, and cases cited therein; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 15 (b), pp. 1184-1185.)

Inasmuch as we affirm the judgment on the basis of the privilege, it is unnecessary for us to reach the validity of the trial court's ruling on the proximate cause issue.

It is not gratifying to reach a result which insulates those guilty of alleged heinous conduct from answering therefor. However, we are satisfied that the purpose and philosophy of the privilege compels this result and that any narrowing of the privilege to redress this grievance would produce mischiefs far worse. (*Pico* v. *Cohn* (1891) 91 Cal. 129, 134 [25 P. 970, 27 P. 537].)

The judgment is affirmed.

Stone, P. J., concurred.

Franson, J.,* being disqualified, did not participate.

Appellants' petition for a hearing by the Supreme Court was denied December 29, 1972.

---

*Assigned by the Chairman of the Judicial Council.