[No. A018927. First Dist., Div. Four. May 28, 1986.]

MEINRAD STEINER et al., Plaintiffs and Appellants, v.
FRANZISKA EIKERLING et al., Defendants and Respondents.

## COUNSEL

Harry E. Rice for Plaintiffs and Appellants.

Paul A. Eisler, Patrick J. Cunningham, Daniel U. Smith and Eric G. Scheie for Defendants and Respondents.

## OPINION

**POCHÉ, J.**—The primary focus of this appeal is whether any cause of action can be stated against those who knowingly prepare and offer a forged will for probate.

### I.

Plaintiffs and appellants are the heirs of Franz Benno Steiner, deceased, and the administrators of his estate (appellants or American relatives); defendants and respondents are the beneficiaries and executor under the purported will (respondents or German relatives).

On April 1, 1976, the testator, a resident of Marin County, California, died while on vacation in West Germany. Keeping his death secret, the German relatives came to Mill Valley, occupied the decedent's home and took possession of his personal property and handwriting exemplars. Thereafter, the German relatives forged or caused to be forged a handwritten will under which they were named beneficiaries and offered the will for probate.

One of the first responses of the American relatives was the filing of a will contest.[1] In that action the court sitting without a jury found that the will was a forgery, and denied the petition for probate.

Thereafter, the American relatives brought the present action against the German relatives in two counts. The first, labeled "Civil Conspiracy," alleged in essence that the German relatives had conspired and agreed among themselves: (1) to keep the decedent's ·death secret from his American relatives until they could obtain possession of decedent's home, exemplars of his handwriting and personal property; (2) to remove and convert the decedent's personal property for their own use; and (3) to deprive the American relatives of their rightful inheritance by forging or causing to be forged a will and presenting it for probate. It was also alleged that as a result of these wrongful acts the American relatives incurred damages by way of legal fees, travel and lodging expenses.

In the second cause of action, sounding in the tort of malicious institution of civil proceedings, it was alleged that respondents had filed the forged will for probate without an honest and reasonable belief that it was signed by decedent; that the filing was for the malicious purpose of usurping the rights of the lawful heirs; that the forged nature of the document was determined with finality in the probate proceeding; and that as a consequence of respondents' wrongful acts the American relatives had incurred litigation costs, attorneys' fees and other expenses.

Respondents demurred to and moved to strike both causes of action. Following a hearing the trial court granted the motion to strike all allegations seeking to set forth a cause of action based upon preparation and offering of a forged will for probate on the basis that "no such action can be stated because the conduct complained of occurred in the course of a judicial proceeding and is therefore absolutely privileged." The court also sustained, without leave to amend, respondents' general demurrer to the second cause of action. Thereafter a judgment dismissing appellants' complaint was entered. This appeal follows.

II.

### "Civil Conspiracy"

Section 47 of the Civil Code[2] provides in relevant part that "A privileged publication or broadcast is one made—. . . [¶] 2. In any . . . (2) judicial

---

[1]They also filed an action for injunctive relief and damages for conversion of personal property and a complaint for unlawful detainer.

[2]Unless otherwise indicated, all further statutory references are to the Civil Code.

proceeding, or . . . (4) in the initiation or course of any other proceeding authorized by law . . . ."

Concluding that the preparation of a forged will and the presentation of it for probate are activities falling within the absolute privilege of section 47, the trial court struck from count one all allegations pertaining to these acts and concluded that no cause of action was stated in the remaining portions of the count.

The trial court relied principally upon *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484 [104 Cal.Rptr. 650], a decision closely similar to the facts before this court. In *Pettitt* the trial court sustained a demurrer to a complaint alleging that defendants, through the preparation and submission of a false or forged document to a city council and planning commission, had caused denial to plaintiffs' application for a zoning variance. In affirming the subsequent judgment of dismissal the Court of Appeal held that the *submission* of the forged permit to the city council was a privileged publication under section 47, subdivision 2 (at pp. 488-490) and that the *preparation* of the forged permit was also within the privilege, being "equivalent to the preparation and presentation of false testimony." (At p. 489.) The court reasoned that "[s]ince there is no exception to the privilege when the testimony is perjured, by a parity of reasoning no exception should apply to the preparation and presentation of false documentary evidence." (*Ibid.*) In so ruling, however, the court complained: "It is not gratifying to reach a result which insulates those guilty of alleged heinous conduct from answering therefor." (*Id.*, at p. 492.)

Although the *Pettitt* rationale has been criticized[3] the California Supreme Court has recently endorsed it, indicating that it is necessary to pay such an unpleasant price to make the privilege operate. In *Ribas* v. *Clark* (1985) 38 Cal.3d 355 [212 Cal.Rptr. 143, 696 P.2d 637], the court showed no hesitation in applying the privilege to testimony in a judicial proceeding. In terms undeniably applicable to the instant case, the court reproduced and approved Dean Prosser's traditional explanation of the policy underlying

---

[3]Those decisions are catalogued and evaluated in the most recent case to criticize *Pettitt*, *Barbary Coast Furniture Co.* v. *Sjolie* (1985) 167 Cal.App.3d 319 [213 Cal.Rptr. 168]. After a thoughtful review of the case law, the court concluded: "In essence, we cannot accept the analysis of the court in *Pettitt* v. *Levy, supra*, 28 Cal.App.3d 484, 492 that heinous conduct must be condoned lest greater mischiefs occur, whereas we can and do endorse the *Bradley* reasoning that an overly broad construction of section 47, subdivision 2, is bound to encourage wrongful conduct immune from judicial redress." (At p. 334.)

*Barbary Coast* was filed 37 days after the California Supreme Court filed its opinion in *Ribas*. Given the language of *Ribas*, its specific mention of *Pettitt* and its endorsement of the rationale that heinous conduct must be condoned lest greater mischiefs occur we are bound under the doctrine of stare decisis to follow *Ribas*. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

the privilege: "'The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.'" (*Ribas* v. *Clark, supra,* at p. 365, citing and quoting Prosser, *Law of Torts* (4th ed. 1971) p. 778.)

In the instant case using the *Pettitt* analysis the presentation of the forged will in the judicial proceeding constituted a "publication" under section 47 and the actual act of forgery was merely the preparation of that document and thus is also privileged.

The trial court therefore correctly granted the motion to strike the material allegations of the first cause of action, which complained of damage stemming from a civil conspiracy to present a forged document for probate. The privilege contained in section 47 covers such publication and is an absolute defense to a cause of action in tort which does not sound in malicious prosecution, including "Civil Conspiracy." Absent those allegations, therefore, the trial court properly concluded that count one failed to state a cause of action.

### III.

### *Malicious Institution of Civil Proceedings*

The trial court sustained respondents' demurrer to the second cause of action because it could "find no authority for the proposition that presenting a purported will for probate will subject the proponent to liability for malicious prosecution, even though it later turns out that the will was forged. . . . [¶] The proponent of a purported will does not prosecute anybody. The adversary phase of a proceeding for probate of a will is necessarily commenced by the contestants, plaintiffs in the case. . . ." We disagree.

Our analysis begins with the definitive treatment of the tort given by the California Supreme Court in *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50-51 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]: "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action

including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress [citation]. [¶] The judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals '. . . as instruments with which to maliciously injure their fellow men.' [Citation.] [¶] . . . [Such a person uses] the judicial process as a vehicle for harassing or vexing his adversary or as a means of coercing the settlement of a collateral matter. The [wronged party] . . . is compelled to expend attorney's fees in defending against the false charge and may suffer . . . mental or emotional distress and possible loss of reputation and standing in the community." (Fn. omitted.)

 Here the only genuine question is whether the proponents of a will who offer it for probate have initiated civil proceedings within the meaning of this tort. About all the Restatement Second of Torts tells us in this regard is contained in a short comment to section 674: "The person who initiates civil proceedings is the person *who sets the machinery of the law in motion,* whether he acts in his own name or in that of a third person, or whether the proceedings are brought to enforce a claim of his own or that of a third person." (Rest.2d Torts, § 674, com. a, italics added.)[4]

However, in a factual context logically indistinguishable from the one at hand that definition has been held to include those who knowingly offer a forged document for probate. In *First National Bank of Mayfield* v. *Gardner* (Ky.Ct.App. 1964) 376 S.W.2d 311, the complaint being tested was that of the executor who sought to recover for the cost of proving that a codicil was a forgery. The executor alleged that seven months after the original probate of testator's will, a man named Wyatt found in his mailbox a letter signed by the testator indicating that a codicil was hidden in a certain location. (*Id.,* at p. 313.) Following the letter's instructions Wyatt found the codicil which substantially increased the defendant's share of the estate. (*Ibid.*) The executor further alleged that the defendant forged or conspired to forge both the letter and the codicil, knowingly permitted them to be uttered for the purpose of defrauding the estate, and instituted proceedings based on the forged instruments. (*Ibid.*) Later, defendant confessed that the instruments were forged. (*Ibid.*) Relying upon the Restatement of Torts the Court of Appeals of Kentucky held that the executor stated a cause of action

---

[4]Comment i to section 674 of the Restatement Second of Torts refers to "plaintiff" and "defendant" in commenting on clause (a) ["the present plaintiff must show that the present defendant, who was the plaintiff in the alleged wrongful civil proceedings, initiated or continued the proceedings, . . ."] but there is no evidence that this was intended to be more than a way of describing the parties' positions; it was not meant to state an additional requirement.

for malicious prosecution. (*Id.*, at p. 315.)[5] In particular the court held that within the meaning of the Restatement of Torts the defendant set the machinery of the law in motion by (a) placing the codicil in the executor's hands as an authentic document and (b) by filing verified pleadings with the court "with a view to compelling action by" the executor. (At p. 316.)

In the instant case the German relatives did more than the proponent of the forged document in *First National Bank of Mayfield:* they actually initiated the legal proceedings themselves by presenting the forged document in a petition for probate and that verified petition is what compelled appellants to file the will contest. Thus the German relatives fit rather neatly into the definition of being the ones who set the machinery of the law in motion.

We therefore hold that those persons who successfully contest a forged will submitted to probate may maintain an action for malicious institution of civil proceedings against those who offered the forged document with knowledge of its falsity.

The judgment is reversed insofar as it sustains respondents' demurrer to the second cause of action, and the cause is remanded for further proceedings consistent with this opinion. In all other respects the judgment is affirmed. Appellants to recover their costs on appeal.

Anderson, P. J., and Channell, J., concurred.

A petition for a rehearing was denied June 24, 1986, and respondents' petition for review by the Supreme Court was denied August 14, 1986.

---

[5]*First National Bank* applied section 674 of the Restatement of Torts. (See 376 S.W.2d at pp. 315-316.) The difference in the wording of section 674 of the Restatement Second of Torts is slight and does not affect its application here.