Filed 3/28/18 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NORMAN BARTSCH HERTERICH,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>ARNDT PELTNER et al.,<br><br>　　　Defendants and Respondents. | A147554<br><br>(San Francisco County<br>Super. Ct. No. CGC-12-523942)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT |

BY THE COURT:

It is ordered that the published opinion filed herein on March 1, 2018, be modified as follows:

The second sentence of the first full paragraph on page 16 should be modified to read as follows: "He claims defendants committed extrinsic fraud by not timely serving him with notice of the probate petition and depriving him of a fair hearing on that petition."

This modification does not change the judgment.

The petition for rehearing is denied.


Dated: _____　　　　　　　　　　_____

　　　　　　　　　　　　　　　　　　　　　　Dondero, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NORMAN BARTSCH HERTERICH,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ARNDT PELTNER et al.,<br><br>        Defendants and Respondents. | A147554<br><br>(San Francisco County<br>Super. Ct. No. CGC-12-523942) |

Plaintiff Norman Bartsch Herterich appeals from summary judgments in favor of defendants Arndt Peltner and Alice Brown Traeg.  The present action arises from prior litigation in a related probate proceeding.  Peltner is the executor of the estate of decedent Hans Herbert Bartsch, and Traeg is the attorney who represented Peltner in the probate of the estate.  During that proceeding, which has come to the attention of this court on several occasions, plaintiff unsuccessfully maintained that he was entitled to Bartsch's estate as a pretermitted heir.  We conclude plaintiff's claims for damages in the present case are based entirely on representations made by defendants in connection with the probate proceeding and therefore his claims are barred by the litigation privilege under Civil Code section 47, subdivision (b).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The background to this case is well known to this court and the parties.  We take judicial notice of our prior opinions in *Estate of Bartsch* (2011) 193 Cal.App.4th 885 (*Bartsch I*) and *Estate of Bartsch* (Jan. 30, 2014, A135322) [nonpub. opn.] (*Bartsch II*).)

In brief, plaintiff unsuccessfully pursued litigation with the goal of obtaining Bartsch's estate under the theory that he is Bartsch's son and had been unintentionally

omitted from his father's will.  In *Bartsch II,* we affirmed the probate court's order granting Peltner's motion for summary judgment on plaintiff's pretermission petition. Plaintiff's petition alleged that he was entitled to inherit because Bartsch either did not believe, or forgot, that he had a child when he executed his will.  We concluded substantial evidence supported the conclusion that Bartsch was aware of plaintiff's existence when he executed his will, particularly because there was evidence that he had reluctantly made court-ordered child support payments to plaintiff's mother for many years.

On September 4, 2012, plaintiff filed a complaint against Peltner and Traeg alleging causes of action for (1) intentional fraudulent misrepresentation, (2) negligent misrepresentation, and (3) fraudulent concealment.  The complaint also includes a prayer for punitive damages.

In the complaint, plaintiff alleged that defendants stated under penalty of perjury that decedent had no children when they initially filed the petition to administer the probate of Bartsch's estate.  They then served the petition on persons who were entitled to receive notice, and also published such notice in the San Francisco Daily Journal. They did not serve notice of their petition on plaintiff, however, although they knew or should have known a statement in Bartsch's will to the effect that he had no children was false and that plaintiff was decedent's son and was entitled to notice.  At that time, defendants also "willfully failed to inform the Court [that plaintiff was Bartsch's son], . . . and instead concealed and omitted that information . . . ."  This conduct allegedly caused plaintiff to falsely believe that decedent was not dead and that no petition had been filed, depriving him of the opportunity to object or to assert a claim the estate.  He also alleged that because of the way defendants stated the allegations in the petition, he believed that decedent "was not aware that he had a son or had forgotten it," leading him to incur significant legal fees by filing an heirship petition.  Additionally, he alleged he was

2

damaged because the court relied on defendants' misrepresentations in rendering rulings adverse to him.

On July 26, 2013, a stipulation and order was filed, staying the action until the expiration of 120 days after the issuance of the remittitur from this court in *Bartsch II.*

On January 30, 2014, we filed our opinion in *Bartsch II,* affirming the probate court's determination that plaintiff was not a pretermitted heir, having been intentionally disinherited by Bartsch.

On April 24, 2014, this court issued the remittitur.

On September 8, 2015, Peltner filed a motion for summary judgment in the present case. The motion was based, in part, on the ground that plaintiff had no beneficial interest in the estate and therefore had not been harmed by his delayed discovery of the probate proceeding.

On November 10, 2015, plaintiff filed a separate statement in opposition to Peltner's motion for summary judgment. Plaintiff also filed objections to Peltner's evidence.

On November 25, 2015, the trial court filed its order granting Peltner's motion for summary judgment. The court found plaintiff could not establish that he had suffered any damages as a result of Peltner's alleged tort because this court had affirmed plaintiff had no interest in Bartsch's estate.

On December 9, 2015, judgment was entered in favor of Peltner.

On February 3, 2016, the trial court (with a different judge) granted a motion for summary judgment filed by Traeg on the ground that plaintiff could not demonstrate reasonable reliance as a matter of law. The court stated: "Plaintiff's decision to pursue the omitted child procedure was unreasonable as a matter of law because: 1) the decedent was aware of plaintiff based upon decedent's numerous child support payments and 2) the explicit disinheritance clause."

3

On February 4, 2016, plaintiff filed a notice of appeal from the December 9, 2015 judgment.

On February 5, 2016, plaintiff filed a notice of intention to move for new trial from the February 3, 2016 order granting Traeg's motion for summary judgment.

On February 16, 2016, plaintiff filed his motion for a new trial. The motion was denied.

On March 16, 2016, judgment for Traeg was filed.

On April 8, 2016, plaintiff filed a notice of appeal from the March 16, 2016 judgment. We consolidated the two appeals.

On November 15, 2017, we asked the parties to file supplemental briefing as to the applicability of the affirmative defense of the litigation privilege to plaintiff's complaint. We received supplemental briefing from all parties.

## DISCUSSION

### I.  *Standard of Review*

A motion for summary judgment is properly granted only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

### II.  *Plaintiff's Allegations*

As summarized by plaintiff, his complaint "alleges that [defendants] wrongfully deprived [him] of his inheritance rights and caused [him] to incur expenses, including attorney's fees, in the prior probate proceeding. The Complaint alleges [defendants] made conflicting representations in the probate proceeding, and [he] is entitled to relief regardless of which representations are true."

4

### III. The Litigation Privilege

A publication or broadcast made in a judicial proceeding is privileged. (Civ. Code, § 47, subd. (b).) Originally enacted as a defense to the tort of defamation, the privilege is now held applicable to any communication, whether or not it amounts to a publication, and to "all torts except malicious prosecution." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*); see *Drum v. Bleau, Fox & Associates* (2003) 107 Cal.App.4th 1009, 1022–1023.) The litigation privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. (*Silberg,* at p. 212.)[1] The litigation privilege also extends to communications that have some relation to an anticipated proceeding. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194.)

The threshold issue in determining whether the litigation privilege applies is whether the defendant's conduct was communicative or noncommunicative. (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211; *Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1480.) The litigation privilege "applies only to communicative acts and does not privilege tortious courses of conduct." (*Kupiec v. American Internat. Adjustment Co.* (1991) 235 Cal.App.3d 1326, 1331.) The "[p]leadings and process in a case are generally viewed as privileged communications." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770.) The privilege extends to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even if the

---

[1] There are four statutory exceptions to the litigation privilege. The first exception is limited to certain proceedings for marital dissolution or legal separation (Civ. Code, § 47, subd. (b)(1)). The second exception is limited to communications made in furtherance of intentionally destroying or altering physical evidence (Civ. Code, § 47, subd. (b)(2)). The third exception is limited to knowing concealment of an insurance policy (Civ. Code, § 47, subd. (b)(3)). The fourth exception is limited to the recording of certain lis pendens (Civ. Code, § 47, subd. (b)(4)). None of these exceptions apply to this case.

publication occurs outside the courtroom in the absence of a court function or the court's officers. (*Gallanis-Politis v. Medina* (2007) 152 Cal.App.4th 600, 616.) The privilege also applies to noncommunicative acts that are necessarily related to privileged communicative conduct. (*Ibid.*)

The principal purpose of Civil Code section 47, subdivision (b) is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. (*Silberg*, *supra*, 50 Cal.3d at p. 213.) The litigation privilege also promotes the effectiveness of judicial proceedings by encouraging attorneys to zealously protect their clients' interests without being concerned with subsequent derivative actions. (*Id.* at p. 214.) Additionally, the privilege gives finality to judgments and avoids unending litigation. (*Ibid.*) For policy reasons, even malicious or fraudulent communications are privileged under Civil Code section 47, subdivision (b). (*Silberg*, at pp. 216, 218.)

## IV. *The Litigation Privilege Applies to Plaintiff's Complaint*

Plaintiff concedes that defendants' allegedly wrongful representations were made as part of a judicial proceeding, and he does not assert that any of the four prerequisites under *Silberg, supra,* 50 Cal.3d 205 have not been met. Instead, he contends defendants have waived that defense and argues that the privilege does not apply because his complaint "seeks to impose liability on [defendants] for breaching duties and violating statutes."

### A. *Waiver*

As plaintiff acknowledges, when a defendant raises the litigation privilege for the first time on appeal, the reviewing court may consider it "when the issue raises a pure question of law." (*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 77 (*Shafer*).) Plaintiff correctly notes that defendants did not raise the litigation privilege in their answers. He also asserts Peltner waived the litigation privilege when he took an oath to serve as the estate's personal representative, relying on

6

Probate Code sections 8403, 8404, subdivision (a), and 7250, subdivision (c), as well as the case of *Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1494 (*Wentland*). As to the assertion regarding Peltner, none of the Probate Code sections plaintiff relies on support his contention.

Probate Code section 8403 provides: "(a) Before letters are issued, the personal representative shall take and subscribe an oath to perform, according to law, the duties of the office. The oath may be taken and dated on or after the time the petition for appointment as personal representative is signed, and may be filed with the clerk at any time after the petition is granted. [¶] (b) The oath constitutes an acceptance of the office and shall be attached to or endorsed on the letters."

Probate Code section 8404, subdivision (a) provides: "Before letters are issued, the personal representative (other than a trust company or a public administrator) shall file an acknowledgment of receipt of a statement of duties and liabilities of the office of personal representative. The statement shall be in the form prescribed by the Judicial Council."

Probate Code section 7250, subdivision (a) states: "When a judgment or order made pursuant to the provisions of this code concerning the administration of the decedent's estate becomes final, it releases the personal representative and the sureties from all claims of the heirs or devisees and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment or order. For the purposes of this section, 'order' includes an order settling an account of the personal representative, whether an interim or final account." The subdivision of this section relied on by plaintiff, subdivision (c), provides: "This section shall not apply where the judgment or order is obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment as to any material fact. For purposes of this subdivision, misrepresentation includes, but shall not be limited to, the omission of a material fact."

7

Plaintiff does not satisfactorily explain how any of these statues vitiate the litigation privilege. Our research has not disclosed any cases under these statutes suggesting that the personal representative of an estate waives the litigation privilege by taking an oath under the Probate Code. And *Wentland* merely holds that the litigation privilege does not apply to an action for breach of contract where a party makes statements in litigation that he or she previously contracted to keep confidential. Here, the complaint does not contain a cause of action for breach of contract.

"The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' " (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742.) Although ordinarily a party may not deprive his opponent of an opportunity to meet an issue in the trial court by changing his theory on appeal, this rule does not apply when, as in this case, the relevant facts are not disputed and the party merely raises a new question of law.[2] (*Ibid.*) Accordingly, because the application of the litigation privilege raises a question of law, we may consider this issue for the first time on appeal. (See *People v. Smith* (2001) 24 Cal.4th 849, 852.)

---

[2] Plaintiff asserts the litigation privilege issue raises questions of fact that were not conclusively determined by the trial court. However, he does not draw our attention to any relevant facts that he claims have not been conclusively determined. For purposes of this appeal, we will assume that plaintiff's allegations in the complaint are true. He also relies on a case that was dismissed on jurisdictional grounds before the motion for summary judgment was decided (*Dale v. Dale* (1998) 66 Cal.App.4th 1172, 1176–1177). That procedural circumstance is not present in this case.

## B. Application

### 1. Breach of Duty to Truthfully Disclose Material Facts

Plaintiff first asserts the litigation privilege does not apply because the complaint is based on defendants' breaches of duties of disclosure and truthfulness. However, the litigation privilege extends to fraudulent statements, even when made to a court, if they were made in furtherance of litigation. (*Boston v. Nelson* (1991) 227 Cal.App.3d 1502, 1507 [intentional misstatements and misleading statements by attorney to trial court were privileged because made in furtherance of litigation].) " 'The "furtherance" requirement was never intended as a test of a participant's motives, morals, ethics or intent.' " (*Ibid.*, quoting *Silberg*, *supra*, 50 Cal.3d at p. 220.) While plaintiff highlights statutes that require personal representatives and their attorneys to act ethically and to truthfully disclose all material facts, courts have held that the litigation privilege applies to probate matters, including cases in which the relevant communication involves forgery or falsification of documents, such as the presentation for probate of a forged will. (*Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 642–643 (*Steiner*).)

In *Steiner,* a California resident died while on vacation in West Germany. His German relatives kept the death a secret and moved into his home, obtaining samples of his handwriting. (*Steiner*, *supra*, 181 Cal.App.3d at p. 640.) They then created a forged handwritten will, under which they were named beneficiaries, and offered the will for probate. (*Ibid.*) After the American relatives pursued a successful will contest, they filed a complaint against the Germans alleging causes of action for civil conspiracy and for malicious institution of civil proceedings. (*Id.* at p. 641.) The appellate court concluded the trial court had properly granted a motion to strike a claim for civil conspiracy based on the presentation of a forged document for probate, concluding the preparation and presentation of the forged will for probate constituted a privileged " 'publication' " under Civil Code section 47. (*Steiner*, at p. 643.) The court noted that the Supreme Court had "showed no hesitation" in applying the privilege to intentionally false testimony made in

9

a judicial proceeding and in concluding that the lack of an effective civil remedy against perjurers " ' "is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say." ' " (*Id.* at pp. 642–643, quoting *Ribas v. Clark* (1985) 38 Cal.3d 355, 365.)

In the present case, the gravamen of plaintiff's complaint is that defendants made false and misleading representations during the probate proceedings with respect to whether Bartsch had a child. Plaintiff specifically alleges that defendants "made false representations of several material facts *that were crucial to the Court's adjudication of the petition for probate*, including: the fact that Bartsch had a son; the fact that Plaintiff was Bartsch's son; the fact that Plaintiff had not been served with the required notice of the petition for probate; the fact that a person who was not interested in the estate had been improperly designated as a person entitled to receive notice of the petition and participate in the proceedings; and the fact that the petition for probate contained false representations regarding material facts, made under oath." (Italics added.) He further asserted his damages, comprised of the legal fees incurred in the probate matter, were incurred as a result of defendants' misrepresentations.

Even if these allegations are true, we join other courts that " 'recognize the necessary harsh result in extending a privilege to false and fraudulent statements made in the course of a judicial proceeding. We accept that result, however, on account of the overriding importance of the competing public policy in favor of enhancing the finality of judgments and avoiding unending postjudgment derivative litigation—a policy which places the obligation on parties to ferret out the truth while they have the opportunity to do so *during* litigation.' " (*Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 26, quoting *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 30.) While we by no means condone intentionally deceptive conduct before the courts, the litigation privilege is absolute.

Plaintiff also asserts that a person harmed by a breach of the duties to disclose and to communicate accurate information has a right to seek judicial redress. However, almost all of the cases that he cites to for this proposition do not invoke the application of the litigation privilege. In the sole exception, *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, the appellate court concluded the alleged course of conduct forming the basis for the plaintiff's cause of action for intentional interference with contractual relations, which included the filing of a notice of lien, was not privileged because the conduct was essentially noncommunicative and was neither related to pending litigation nor in anticipation of a subsequent interpleader action. (*Id.* at p. 348.) Here, plaintiff's complaint is based *entirely* on a theory of fraudulent miscommunications relating to and arising out of the prior probate proceeding.[3]

Plaintiff also contends the litigation privilege does not bar causes of action when the defendant breaches duties owed to the plaintiff. In so arguing, he relies, in part, on *Shafer*, *supra*, 107 Cal.App.4th 54, which considered a lawyer's liability for fraud in light of Insurance Code section 11580. Generally speaking, a judgment creditor of an insured may sue the insurer under the insured's policy to recover on a judgment. (Ins. Code, § 11580, subd. (b)(2).) Under this statute, the judgment creditor has an independent cause of action against the insurer to enforce the insurer's obligation to indemnify the insured. (*Shafer*, at p. 68.)

---

[3] In his opening brief, plaintiff describes his three causes of action as follows: "(1) [Defendants] breached their duty of *disclosure* when they petitioned for probate of the Will while concealing that [plaintiff] was (or reasonably could be) Bartsch's child [citation]; (2) [Defendants] breached their duty to serve *notice* of the probate on [plaintiff], who [defendants] knew was or reasonably could be Bartsch's child [citations]; (3) [Defendants] breached their duty of *good faith* by intentionally presenting false evidence in the pretermission litigation, misrepresenting to the court and to [plaintiff] that Bartsch had provided [defendant] with information from which it must be concluded that [plaintiff] was Bartsch's child." (Italics in original.)

11

In *Shafer,* the insurer's counsel misrepresented the scope of the insurance coverage to the judgment creditors. (*Shafer*, *supra*, 107 Cal.App.4th at pp. 74–75.) The *Shafer* court held that the litigation privilege did not apply because application of the privilege would undermine the policies behind Insurance Code section 11580. (*Shafer*, at pp. 77–78.) *Shafer* also cautioned that its holding was limited: "Our analysis of the litigation privilege is based on the principles furthered by [Insurance Code] section 11580 and the case law recognizing that an attorney may be held liable for making fraudulent statements to a nonclient." (*Id*. at p. 82, fn. 7.) The present case does not involve Insurance Code section 11580. Nor are plaintiff's claims based on misstatements made by defendants *to plaintiff*. Instead, his claims are based on misstatements made *to the probate court*.

Plaintiff also cites to *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467 (*Feldman*) for the proposition that the litigation privilege does not apply to causes of action for misleading statements and representations. However, the holding in that case turns on its facts. In *Feldman*, a property owner filed an unlawful detainer action against its tenant and subtenants. (*Id*. at p. 1475.) The subtenants filed a cross-complaint for retaliatory eviction and numerous other causes of action, claiming, among other things, that the property owner's agent had made threats before any litigation was actually filed, including that the agent had prosecuted hundreds of evictions, so he knew the landlord would win; regardless of the outcome, the subtenants would never be able to rent another apartment in San Francisco; he knew the law and discussed the case with his uncle, a federal judge; and the subtenants would not be able to file a lawsuit because they would not win. (*Id*. at pp. 1474–1475.) The property owner filed an "anti-SLAPP" (strategic lawsuit against public participation) motion to strike the cross-complaint under Code of Civil Procedure section 425.16, on the ground that the action arose out of protected First Amendment activity and the alleged wrongdoing was protected by the litigation privilege (Civ. Code, § 47). (*Feldman*, at pp. 1475–1476.)

12

The appellate court held that all of the subtenants' causes of action were barred by the litigation privilege except for a claim for negligent misrepresentation, because that cause of action did not appear to be based upon communications or communicative conduct covered by the litigation privilege. (*Feldman*, *supra*, 160 Cal.App.4th at p. 1493.) Instead, the relevant communications were based on false representations made with the intent to induce the plaintiffs to move into the subleased apartment in the first place. (*Ibid*.) Once again, in the instant matter there are no allegations in the complaint concerning communications occurring outside of the context of the prior probate litigation.[4]

### 2. *Statutory Duties*

Plaintiff argues that the litigation privilege does not apply because its effect would be to render other coequal statutes inoperable. He cites again to statutes governing the duties of personal representatives to refrain from fraud, such as Probate Code sections 8403 [requirement to take an oath to perform according to law] and 7250, subdivision (a) [personal representatives are subject to claims of heirs or devisees]. However, he does not cite to any cases holding that the litigation privilege does not apply in the context of probate matters involving such claims. The *Steiner* case, discussed above, shows that probate matters are not exempt from the litigation privilege.

---

[4] Other cases relied on by plaintiff are also distinguishable in that their holdings are highly fact-specific. For example, in *Rickley v. Goodfriend* (2013) 212 Cal.App.4th 1136, the appellate court held that the litigation privilege did not protect attorney-defendants' communications or conduct that interfered with a court-ordered remediation plan because the conduct had the intended effect of actively assisting their clients in continuing a nuisance, involved nonparticipants to the litigation, and did not constitute an attempt to achieve the objects of the litigation. (*Id.* at p. 1148.) Plaintiff also cites to cases holding that the litigation privilege does not apply to legal malpractice actions. Here, the allegations do not concern claims brought by a former client against his or her attorney.

13

Plaintiff also asserts the litigation privilege does not bar statutory causes of action for fraud. He relies on cases such as *People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267 (*Persolve*). In that case, the People of the State of California filed a civil law enforcement action against a debt collection company and the company's attorneys, alleging violations of fair debt collection practices acts. (*Id.* at pp. 1270–1271.) The parties did not dispute that the complaint was based solely on communications and acts related to judicial proceedings. (*Id.* at p. 1272.) The trial court sustained the defendants' demurrer without leave to amend, finding the litigation privilege applied. (*Ibid.*)

In reversing, the appellate court observed that "the litigation privilege is not without limit. [Citation.] Courts have found exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other coequal state laws. [Citation.] For example, the litigation privilege does not apply to perjury, subornation of perjury, false report of a criminal offense, and ' "attorney solicitation through the use of 'runners' or 'cappers.' " ' [Citation.] The recognition of these exceptions has been guided by the ' "rule of statutory construction that particular provisions will prevail over general provisions." ' [Citation.] If a statute is more specific than the litigation privilege and would be significantly or wholly inoperable if the privilege applied, the privilege will not shield violations of that statute." (*Persolve*, *supra*, 218 Cal.App.4th at p. 1274.) The appellate court concluded the privilege does not apply to causes of action based on violations of the statutory fair debt collection laws provisions because application of the privilege would entirely vitiate those laws and render their protections meaningless. (*Id.* at p. 1275.) While the case had been brought under the unfair competition law, and not directly under the relevant statutes, the court nevertheless concluded the privilege did not apply because the statutes were more specific than the litigation privilege and application of the privilege would render the prohibitions wholly inoperable. (*Id.* at pp. 1276–1277.)

14

We first note that plaintiff's complaint does not contain any statutory actions, nor does it make reference to any statutes.[5] Instead, his claims are based on theories of common-law fraud. Courts have observed: "The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322.) Further, the statutes at issue in *Persolve* were enacted for the protection of the public, requiring them to be "interpreted broadly in favor of their protective purpose." (*Persolve*, *supra*, 218 Cal.App.4th at p. 1277.) The Probate Code sections plaintiff relies on are not similarly protective of the public. Other cases cited to by plaintiff are inapposite.[6]

Plaintiff asserts allowing defendants to claim the litigation privilege hinders the policy of allowing access to the courts because their actions "deprived [him] of timely access to the court." We are not convinced. While the complaint alleges that plaintiff was not initially served with the petition for probate, we can attest that he has diligently pursued the underlying merits of his claims regarding his entitlement to his father's estate. In the context of equitable relief, courts have observed: " 'If the aggrieved party had a reasonable opportunity to appear and litigate his claim or defense, fraud occurring in the course of the proceeding is not a ground for equitable relief. The theory is that these matters will ordinarily be exposed during the trial by diligence of the party and his counsel, and that the occasional unfortunate results of undiscovered perjury or other intrinsic fraud must be endured in the interest of stability of final judgments.' [Citation.]

---

[5] Plaintiff belatedly asserts his complaint alleges facts sufficient to state statutory causes of action under Civil Code sections 1709, 1710, 2223, and 2224, as well as Probate Code sections 8002, subdivision (a)(3); 8007, subdivision (b)(1); 8110, subdivision (a); and 7250. He did not alleged claims under these statutes in his complaint.

[6] For example, plaintiff cites to *Haneline Pacific Properties, LLC v. May* (2008) 167 Cal.App.4th 311, a case in which the appellate court found the privilege did not apply because the statements at issue were not made in anticipation of litigation. (*Id.* at pp. 319–320.)

15

The reason for this rule is that litigation must at some point come to an end." (*Mercury Casualty Co. v. Superior Court* (1986) 179 Cal.App.3d 1027, 1034–1035.) The same principles apply to the instant case.

### 3. *Extrinsic Fraud*

Plaintiff contends the privilege should not apply to publications that "violate due process and perpetuate extrinsic fraud." He claims defendants committed extrinsic fraud by not timely serving him with notice of the probate petition and depriving him a fair hearing on his pretermission petition. We observe extrinsic fraud is recognized as a proper ground for a collateral attack on a judgment that has been obtained under circumstances where the aggrieved party was deliberately kept in ignorance of the action or in some other way prevented from presenting a claim or defense. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 643, fn. 5; see *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 833–834 (*Kuehn*).) The instant action, however, is not a collateral attack to set aside the probate judgment, but rather an independent tort suit seeking damages from defendants: " 'Where a civil judgment is procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment, *not to sue in tort*.' " (*Kuehn,* at p. 834, italics added.)

### 4. *Tortious Conduct*

Plaintiff also asserts the litigation privilege does not apply because the complaint uses defendants' communications solely as evidence of tortious conduct. However, even accepting this proposition, it does not detract from the fact that the alleged tortious conduct is entirely based on these same communications, which are protected by the privilege.

In substance, the complaint asserts that defendants' actions in checking the box on the probate petition indicating that Bartsch had no child and verifying the petition caused plaintiff to spend over $750,000 in legal fees in an unsuccessful effort to inherit the entirety of his father's estate. All the associated wrongful representations were made in the course of a judicial proceeding, by participants authorized by law to achieve the

16

objects of the litigation, and have a logical relation to the action. These representations were by the personal representative of the estate, and an attorney on behalf of the personal representative, and all occurred in conjunction with the filing of a probate petition, the subsequent prosecution of that petition, and the defendants' opposition to plaintiff's heirship petition.

Finally, plaintiff asserts the litigation privilege has not barred relief in cases with facts similar to the present one. The cases he relies on primarily address extrinsic fraud. None of these cases address the application of the litigation privilege to derivative lawsuits following the conclusion of a probate matter. An opinion is not authority for a proposition that it did not consider. (*City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1318.)

## DISPOSITION

The judgments are affirmed.

17

_____
Dondero, J.

We concur:


_____
Margulies, Acting P. J.


_____
Banke, J.

_A147554  Herterich v. Peltner et al._

18

Trial Court:          San Francisco County Superior Court

Trial Judges:         Hon. Ernest H. Goldsmith
                      Hon. Harold H. Kahn

Counsel:

        Law Office of Michael L. Boli, Michael L. Boli; Law Offices of Carleton L. Briggs, Carleton L. Briggs, for Plaintiff and Appellant

        Law Office of Thomas C. Tagliarini, Thomas C. Tagliarini, for Defendant and Respondent Arndt Peltner

        Andrew A. Kapur for Defendant and Respondent Alice Brown Traeg

*A147554  Herterich v. Peltner et al.*