Filed 11/7/24  Haacke v. Herrera CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

CHA HAACKE,

    Plaintiff and Appellant,

v.

VICTOR J. HERRERA et al.,

    Defendants and Respondents.

E080450

(Super.Ct.No. CVSW2000934)

OPINION

APPEAL from the Superior Court of Riverside County.  Judith F. Hayes, Judge. (Retired Judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Cha Haacke, in pro. per., for Plaintiff and Appellant.

Kaufman Dolowich, Courtney Curtis-Ives, and Robert J. Borowski, for Defendants and Respondents.

A brother and sister are beneficiaries of a trust set up by their mother.  After the mother was deemed incompetent, they became co-trustees of the trust.  They could not

get along, and they agreed to the appointment of a professional fiduciary as a neutral successor trustee. Alas, this arrangement did not resolve their disputes.

In this lawsuit, the brother and his wife allege the trustee's attorneys aided and abetted fraud by the sister and the trustee. The brother's wife, representing herself, appeals from the trial court's order granting the anti-SLAPP motion of two of the attorneys and dismissing plaintiffs' first amended complaint. The brother is not an appellant here, as he has been declared a vexatious litigant and this court denied his request for permission to appeal.[1] We affirm.

FACTS

In 2012, plaintiff Rodney Haacke and his sister Desrie Pfister became co-trustees of the Haacke Family Trust dated August 23, 1994 (the trust), after their mother was deemed mentally incompetent. The siblings did not agree on how to administer the trust. In June 2017, Rodney Haacke petitioned in probate court to remove his sister as co-trustee (Case No. MCP1700472, the probate action), and separately petitioned to be appointed as conservator for the mother (Case No. MCP1700476, the conservatorship action).

The siblings, together with the mother's attorney, agreed that Robin Shea, a professional fiduciary, would be appointed as a neutral successor trustee. In October

---

[1] Our order denying the brother permission to appeal states his request focused on whether he should have been declared a vexatious litigant in the first place, and failed to seriously attempt to explain how the appeal has merit and was not filed for purposes of harassment or delay. (See Code Civ. Pro., § 391.7, subd. (b); *McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, 1217.)

2

2017, Shea hired defendants and respondents Victor J. Herrera and Kevin McKenzie of the law firm Swan, Carpenter, Wallis & McKenzie PC to represent her. The same month, the probate court accepted the parties' stipulation and appointed Shea as the successor trustee of the trust. Herrera has since changed firms but continues to represent the trust.

Soon after her appointment, Shea became concerned about both siblings' use of trust assets, and the quality of care being provided to their mother, who had been living with Rodney Haacke. In December 2017, with the support of the mother's attorney, Shea (acting through her attorneys) petitioned to be appointed conservator of the mother's person and estate. The court granted the petition and appointed Shea as conservator, though it did not authorize her to change the mother's residence.

In January 2018, the mother died. Later that month, Rodney Haacke filed a petition requesting, among other things, to compel an accounting and to remove Shea as trustee. The parties reached a settlement agreement on the date the petition was set for trial, in May 2018, after negotiations between Herrera and Rodney Haacke outside the courtroom.[2] The parties agreed: (1) the petition would be dismissed without prejudice; (2) Shea would make a partial distribution to both siblings; (3) Shea would place two

_____

[2] Herrera declared he "explained" to Rodney Haacke "that if we conducted a five year forensic accounting, at his request, and if it was revealed that Rodney and/or Desrie misused Trust funds [Shea] would have a duty to the Trust to pursue litigation to make the Trust whole. We would seek to have any property that was held outside of the Trust (that previously belonged to the Trust) returned to the Trust, which might include [Rodney Haacke's residence]. In addition, if there was elder abuse, we may have to pursue that and if found, it might result in Rodney and Desrie being unable to receive from the Trust."

rental properties owned by the trust on the market for fair market value; (4) Shea would distribute the trust equally between the beneficiaries; (5) Pfister and Rodney Haacke would "accept and approve all prior co-trustee actions and expenses" during the period before Shea's appointment; and (6) Shea would "prepare and file with the court a court appropriate accounting and request for distribution."

After the settlement, Rodney Haacke continued to challenge Shea's administration of the trust through objections and petitions filed in the probate action and the conservatorship action, including by opposing any payment of fees to Shea or her attorneys. The objections and petitions failed. In January 2019, the court approved the first and final accounting in the conservatorship action, and in July 2019 it approved the first interim accounting in the probate action, including approval of fees for both the trustee and her attorneys. In March 2021, the court approved a second accounting in the probate action, including payment of fees for the trustee and her attorneys.

Meanwhile, in April 2019, plaintiff and appellant Cha Haacke, who is Rodney Haacke's wife, filed a civil suit against her husband's mother's estate and Shea (Case No. MCC1900422, the employment lawsuit), claiming unpaid wages for taking care of her husband's mother. The court approved Shea's request to hire different counsel to defend the employment lawsuit on behalf of the trust.[3]

---

[3] Two attorneys from the firm Shea hired to defend the employment action are named defendants in the present lawsuit, but are not party to this appeal.

4

In December 2020, Rodney Haacke and appellant, representing themselves, filed this lawsuit. Their initial complaint, however, was either never served, or not served until much later. Herrera and McKenzie contend that they were never served with the initial complaint. But the register of actions shows that on May 6, 2022—the same day as an attorney substituted in to represent them—plaintiffs filed proof of service by mail of the summons and complaint. At a hearing on May 10, 2022, the court was satisfied that all defendants had been served, and therefore discharged an order to show cause regarding failure to serve. On appeal, appellant takes the position the original complaint was served on Herrera and McKenzie on May 9, 2022. Her only record citation in support of this view, however, is the trial court's register of actions, and it is not apparent how she derives that date from that source. The proofs of service filed May 6, 2022, were not included in the record on appeal, so we have no way to know when they show the documents were mailed.

In 2020 and 2021, Rodney Haacke also filed several additional, separate lawsuits, including one seeking rescission of the May 2018 settlement agreement. In March 2022, on Shea's motion (represented by Herrera), the trial court in the rescission action deemed Rodney Haacke a vexatious litigant.

In this case, on May 10, 2022, plaintiffs served McKenzie with a first amended complaint. The version of the first amended complaint filed with the trial court on May 31, 2022, differs slightly from the version served on defendants, in that only in the filed version is Shea named as a defendant. Our record does not reflect when or if Herrera was

5

served with the first amended complaint; only one proof of service, showing service on McKenzie, was filed with the court.

The first amended complaint (both versions) asserts four causes of action. Only one of them, however, is asserted by appellant: the first cause of action for aiding and abetting fraud.[4] A similar cause of action was also included as the first cause of action in the initial complaint.

The pleaded theory of liability in that first cause of action is that Shea, aided and abetted by her attorneys, never intended to distribute the trust equally between beneficiaries, as stated in the May 2018 agreement. Instead, she conspired with her attorneys and with Pfister to misallocate trust assets, including by denying appellant any pay for her work as caretaker for her husband's mother. Specifically, the complaint asserts Herrera and McKenzie assisted Pfister and Shea in committing fraud by "(1) having the probate court appoint Ms. Shea to use her position as a trustee and conservator to cover up [Pfister's] theft; (2) refusing and failing to recover or marshal the Trust assets; (3) refusing and failing to hire a forensic accountant nor prosecute [Pfister's] illegal activities; (4) continuing to provide [Pfister] and Ms. Shea with legal representation and support in filing court motions, stipulations, MSJ, etc., against the Plaintiffs; (5) refusing and failing to pay the Plaintiffs' legitimate wage claims and

---

[4] The other three causes of action were alleged only by Rodney Haacke so are not at issue in this appeal. Those causes of action are for aiding and abetting breach of contract, aiding and abetting breach of fiduciary duties, and intentional interference with expected inheritance.

6

damages; (6) using the Trust as [Pfister's] and Ms. Shea's 'protection fund'; [and] (7) attempting to distribute the 'remaining' Trust assets to [Pfister] while all defendants intentionally put the Trust as Rodney [Haacke]'s *equal share* and rightful inheritance at risk of insolvency."

On July 11, 2022, Herrera and McKensie moved to strike the first amended complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16 (section 425.16). The trial court granted the motion.

DISCUSSION

The trial court found that all plaintiffs' claims, including appellant's claim for aiding and abetting fraud here, arise from activity protected by the anti-SLAPP statute, and that plaintiffs failed to demonstrate their claims had minimal merit. We agree.

A. *Applicable law*

Section 425.16 "'sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . . , which are brought to challenge the exercise of constitutionally protected free speech rights.'" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) "A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the [federal or state] Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail." (*Ibid.*, quoting § 425.16, subd. (b)(1).)

7

"The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)  Thus, "[a]nti-SLAPP motions are evaluated through a two-step process." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Ibid.*)  "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Ibid.*)  At this second stage, the court "does not weigh evidence or resolve conflicting factual claims.  Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Baral*, *supra*, 1 Cal.5th at pp. 384-385.)

"Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit.  Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park*, *supra*, 2 Cal.5th 1057, 1067.)

B. *Analysis*

1. *Timeliness*

Appellant argues that Herrera and McKenzie's anti-SLAPP motion should have been denied as untimely filed. Any timeliness argument could be deemed forfeited because it was never raised in the trial court. (*Hunter v. CBS Broadcasting Inc.* (2013) 221 Cal.App.4th 1510, 1526; see also *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 [arguments generally not to be considered for first time on appeal, particularly "when the new theory depends on controverted factual questions"].) We prefer, however, to address the issue on the merits. We reject this argument for two reasons.

First, the record on appeal indicates the motion was timely, or at least does not establish that it was untimely. A defendant's deadline for filing an anti-SLAPP motion is measured from service—not filing—of the complaint. (§ 425.16, subd. (f).) The defendant has sixty days from service of the first complaint (or cross-complaint) that pleads the cause of action falling within the anti-SLAPP statute. (*Ibid.*; see *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 641, 646 (*Newport Harbor*).) In this case, it is unusually difficult to identify which complaint that is, and when that complaint was served. The initial complaint and the first amended complaint each have a similar cause of action that would trigger the running of the

9

deadline.  But in ruling on the anti-SLAPP motion, the trial court was not asked to decide the disputed factual question of when each of those complaints was served.

Nevertheless, if the initial complaint was served by mail on May 6, 2022, as the register of actions suggests, Herrera and McKenzie's deadline for filing an anti-SLAPP motion would be extended by five calendar days, and thus the motion they filed would be timely.[5]  (See Cal. Code Civ. Proc., § 1013, subd. (a) [when a document is served by mail, any "right or duty to do any act or make any response within any period or on a date certain after service of the document . . . shall be extended five calendar days" if both place of mailing and place of address are within California].)  If the sixty-day period began to run on May 10, 2022, when McKenzie was served by substitute service with the first amended complaint, again, the anti-SLAPP motion would be timely.[6]

Second, even if Hererra and McKenzie's anti-SLAPP motion were untimely—say, if the proofs of service plaintiffs filed on May 6, 2022, showed the initial complaint was served by mail before that date—the trial court has "considerable discretion" to consider untimely anti-SLAPP motions.  (*Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 787.)  Appellant has not articulated any viable reason it would not have been within the trial court's discretion to do so here.

---

[5]  The sixty fifth day would have been July 10, 2022, but that was a Sunday.  The deadline, therefore, would be July 11, 2022, which is the date the anti-SLAPP motion was filed.

[6]  The sixtieth day would have been July 9, 2022, but that was a Saturday.  The deadline, therefore, still would be July 11, 2022.

Appellant's comparison of this case to *Newport Harbor* is unavailing. In that case, our Supreme Court agreed with both the trial court and the court of appeal that an anti-SLAPP motion filed years after service of the first complaint that pleaded a cause of action coming within the scope of the anti-SLAPP statute, though less than 60 days after an amended complaint with a similar cause of action, was untimely. (*Newport Harbor*, *supra*, 4 Cal.5th at pp. 641, 646.) Herrera and McKenzie's anti-SLAPP motion was filed long after the initial complaint was *filed*, but service of the initial complaint was delayed, so the sixty-day period for filing an anti-SLAPP motion did not immediately begin to run. At most, the motion was untimely by only a short period and may well not have been late at all. (See *Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 122-123 [finding no abuse of trial court's implied exercise of discretion to consider arguably untimely motion].) Also, service by mail may not have resulted in actual notice of the lawsuit to Herrera and McKenzie.

Thus, we will not find the anti-SLAPP motion untimely.

2. *Protected activity*

Appellant contests whether her cause of action against Herrera and McKenzie arises from protected activity. It does.

It is well established that "all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are

11

per se protected as petitioning activity by the anti-SLAPP statute."[7] (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480 (*Cabral*); see § 425.16, subd. (e)(1) and (e)(2).) The protection also extends to "communications that are intimately intertwined with, and preparatory to, the filing of judicial proceedings." (*Cabral*, at p. 482.)

McKenzie declared his "only involvement in the matters alleged by Plaintiffs . . . was to appear in court on Mr. Herrera's behalf when he had a scheduling conflict," which occurred "2-3 times total." Herrera's declaration details his representation of Shea in the various lawsuits filed by plaintiffs, including opposing several attempts to remove Shea as trustee, negotiating the May 2018 settlement, and assisting Shea in preparing, submitting, and obtaining court approval of accountings. Plaintiffs produced no evidence showing McKenzie and Herrera did anything other than provide "normal, routine legal services," which are protected under the anti-SLAPP statute. (*Cabral*, *supra*, 177 Cal.App.4th at p. 481.) Thus, Herrera and McKenzie carried their burden on the first prong of the anti-SLAPP analysis.

In support of a different conclusion, appellant argues Herrera and McKenzie's conduct falls within the anti-SLAPP law's narrow exception for illegal conduct. The argument is unpersuasive. The anti-SLAPP law exempts from the definition of protected activity conduct that is criminal, where the criminality of the conduct is either conceded by the defendant or conclusively established as a matter of law. (*Flatley v. Mauro* (2006)

---

[7] Thus, appellant's argument that Herrera and McKenzie "had no standing" to bring an anti-SLAPP motion does not merit extended discussion.

39 Cal.4th 299, 320 (*Flatley*) [where "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action"]; see *Towner v. County of Ventura* (2021) 63 Cal.App.5th 761, 771 [interpreting *Flatley*'s use of the phrase "illegal" to mean "criminal, not merely a violation of a statute"].)  Conduct falling within this definition is "not in furtherance of constitutionally protected speech or petition rights," so is outside the anti-SLAPP law's protection.  (*Flatley*, at p. 324.)

Appellant claims Pfister and Shea illegally failed to pay her wages owed for caring for her husband's mother, and that the defendant attorneys aided and abetted them in doing so.  Nothing in evidence, however, conclusively establishes that any improper nonpayment happened, or if it did, that it was a criminal act.  (See Pen. Code, § 487m, subd. (b) [wage theft requires "*intentional* deprivation of wages . . . or other compensation by unlawful means, with the *knowledge* that the wages . . . or other compensation is due to the employee" (italics added)].)  Appellant's assertion that it is "undisputed" that she "suffered *wage theft*" is false.  The merits of appellant's wage claims are, so far as we are aware, being adjudicated in separate (civil) litigation.[8]  (See also *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 446

---

[8] In the employment lawsuit, the trial court granted summary judgment against appellant on statute of limitations grounds, but we reversed that order in an unpublished decision.  (See *Haacke v. Shea* (June 24, 2022, E076015) [nonpub. opn.].)  The status of that case is not discernible from our record.

13

["when a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law"].)

Further, even if it turns out Pfister and or Shea failed to pay appellant some amount she was due, there is nothing criminal about attorneys representing their client in defending a disputed claim. Framing the issue as assisting a theft, rather than defending a claim of nonpayment of amounts due, does not change the analysis. (See, e.g., *Cabral*, *supra*, 177 Cal.App.4th 471, 481 [even if defendant attorney's actions "had the effect of defeating or forestalling [the plaintiff's] ability to execute her judgment for child support, thereby (according to [the plaintiff]) violating the child support evasion statutes, this is not the kind of illegality involved in *Flatley*"]; *Bergstein v. Strook & Strook & Lavan LLP* (2015) 236 Cal.App.4th 793, 802 (*Bergstein*) [defendant attorneys' alleged aid to their client in "theft of confidential and privileged documents and information, and in the unlawful purchase of claims for the purpose of forcing an involuntary bankruptcy," was protected litigation activity].)

Appellant proposes that Herrera and McKenzie's petitioning activity should be considered "*evidence* of defendants' alleged wrongful conduct" that is "only incidental to [her] cause of action," and thus not protected activity. Not so. There are no alleged *acts* by Herrera and McKenzie that are not part of their representation of Shea. And it is the "acts supplying a basis for relief" that matter in the anti-SLAPP analysis, not the plaintiff's framing of the cause of action. (*Bonni*, *supra*, 11 Cal.5th at p. 1010.)

14

Appellant also argues her claim concerns "only private matters" and lacks sufficient connection "with a public issue" for the anti-SLAPP statute to apply. This argument muddles together the four parts of section 425.16, subdivision (e). The parts applicable here, section 425.16, subdivisions (e)(1) and (e)(2), do not include the language "in connection with an issue of public interest," which appears in subdivisions (e)(3) and (e)(4). Our Supreme Court has construed this difference to mean there is no "separate 'public issue' requirement" for causes of action, such as appellant's, that fall within section 425.16, subdivisions (e)(1) or (e)(2). (*Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1113.) Rather, "plainly read, section 425.16 encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." (*Ibid.*) The court expressly rejected the statutory interpretation appellant adopts here. (*Id.* at p. 1114.)

We find Herrera and McKenzie carried their burden of demonstrating the claim appellant asserts against them arose from protected activity. We turn, then, to the second prong of the anti-SLAPP analysis.

3. *Probability of prevailing*

In her opening brief, appellant's only argument addressing the second prong of the anti-SLAPP analysis is her contention that the litigation privilege does not bar her cause of action against Herrera and McKenzie. That argument, however, lacks merit.

The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a "'publication or broadcast' made as part of a 'judicial proceeding'" is privileged. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) "[T]he privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).) Statements in pleadings, motions, and other court filings are, of course, core examples of such communications. (E.g., *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 118.) "Numerous courts have held that statements relating to settlements also fall within the [litigation] privilege, including those made during settlement negotiations." (*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 843-844.)

"To effectuate its vital purposes, the litigation privilege is held to be absolute in nature." (*Silberg*, *supra*, 50 Cal.3d at p. 215.) If a communication falls within its scope, the privilege applies no matter whether it is "true or false or made with malice or without" it. (*Holland v. Jones* (2012) 210 Cal.App.4th 378, 382.) The privilege applies even if the communication is fraudulent. (*Herterich v. Peltner* (2018) 20 Cal.App.5th 1132, 1141.) "The only exception to application of [the litigation privilege] to tort suits has been for malicious prosecution actions." (*Silberg*, at p. 216.) It follows that appellant's cause of action, based on purported fraud in connection with the May 2018

16

settlement agreement and various litigation activities by Herrera and McKenzie on behalf of their client, is barred by the litigation privilege and thus has no likelihood of success.

Appellant cites two cases in support of a different conclusion. In *People v. Persolve, LLC* (2013) 218 Cal.App.4th 1267, 1275-1277, the court of appeal held the litigation privilege does not apply to enforcement claims brought under California's Rosenthal Fair Debt Collection Practices Act or the Federal Fair Debt Collection Practices Acts. In *Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 Cal.App.4th 54, 78-82, the court of appeal held the litigation privilege does not apply to the statutory cause of action created by Insurance Code section 11580. Neither of these holdings applies here.

Appellant's cause of action arises from acts protected under the anti-SLAPP statute, and she cannot demonstrate any likelihood of success because the litigation privilege applies. The trial court was correct to grant Herrera and McKenzie's anti-SLAPP motion.

DISPOSITION

The trial court's order granting Herrera and McKenzie's anti-SLAPP motion is affirmed.  Herrera and McKenzie are awarded costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL                    
J.

We concur:

MILLER                   
        Acting P. J.

FIELDS                   
        J.