Filed 1/29/24  River Park Plaza v. Fresno Irrigation District CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RIVER PARK PLAZA, LP,<br><br>        Plaintiff and Appellant,<br><br>                v.<br><br>FRESNO IRRIGATION DISTRICT,<br><br>        Defendant and Respondent. | F085791<br><br>(Super. Ct. No. 22CECG02722)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  Kimberly Gaab, Judge.

Wanger Jones Helsley, John P. Kinsey, Kurt F. Vote and Marisa L. Balch for Plaintiff and Appellant.

Georgeson Law Offices, C. Russell Georgeson and Robert J. Willis for Defendant and Respondent.

-ooOoo-

Plaintiff River Park Plaza, LP (River Park) appeals from an order granting the anti-SLAPP[1] motion of defendant Fresno Irrigation District (District).  River Park sued the District claiming the District interfered with a contract River Park had with a

---

[1]     SLAPP is an acronym for "strategic lawsuit against public participation."  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 815, fn. 1.)

landscaping company to replace landscaping in a shopping center River Park owns. River Park alleged the interference occurred when the District submitted a letter to the City of Fresno (City) concerning the effect another proposed project at the shopping center would have on the District's pipeline easement that traversed the property. River Park alleged the letter resulted in the City issuing a stop work notice on the property which required the landscaping company to stop working on its project and caused River Park to incur additional costs related to that project. The trial court granted the District's anti-SLAPP motion on the ground that Code of Civil Procedure section 425.16[2] protected the District's communication and River Park had not met its burden of establishing a reasonable probability it would prevail on its claim because the District's letter is absolutely privileged under Civil Code section 47, subdivision (b) as a communication made in an official proceeding.

On appeal, River Park contends its complaint did not arise from constitutionally protected activity and the absolute privilege does not apply to the District's letter. Finding no merit to River Park's contentions, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from River Park's complaint, documents attached to the District's request for judicial notice, and the declarations submitted in support of and in opposition to the special motion to strike. These facts are largely undisputed.

River Park owns the River Park Plaza Shopping Center, located at the northeast corner of Blackstone and Nees Avenues in Fresno (the property). In July 1986, the District and River Park's predecessor-in-interest, River Park Properties, executed and recorded a "Grant of Easement and Right-of-Way and Agreement for Substitution of Pipeline for Open Canal Owned by Fresno Irrigation District" (the easement). The

---

[2]     Unless otherwise indicated, subsequent statutory references are to the Code of Civil Procedure.

2.

easement granted the District "the perpetual and exclusive right and easement" to construct, install, and maintain "pipes, pipelines, and conduits, and to flow and conduct water through said pipes, pipelines and conduits, across, over, through and under" the property "in a perpetual and exclusive right-of-way and easement" consisting of a strip of land described in an attachment and as shown on an exhibit. The easement further granted the District "all rights convenient or incidental thereto," including the right of ingress and egress across the property. In addition, River Park agreed not to construct or maintain a "building, fence, or other structure" on the right-of-way and easement which would interfere with either's use without the District's consent, and the District was granted the right to remove any encroachments from the right-of-way and easement.

The pipeline was installed in 1986/1987. It traverses underneath a small portion of the property. District had not performed any maintenance or improvements on the pipeline since its installation.

In early 2022, in response to California's ongoing severe drought, River Park contracted with Elite Private Landscaping, Inc. (Elite) to replace the existing landscaping on the property with drought-tolerant landscaping and modern irrigation controllers (the landscaping project). A small portion of the landscaping was over the top of the easement.[3]

In addition, River Park began improvements to convert a Chick-fil-A drive-through to a "double-drive through" to alleviate parking congestion and help minimize emissions from idling vehicles (the drive-through project). That project included an expansion of the original drive-through that had existed since the building was

---

[3]     In a declaration River Park filed with its opposition to the motion to strike, Elite's general manager, Craig Stowell, declared that Elite entered into the landscaping contract with River Park on April 11, 2022, which date is confirmed on the landscaping contract attached to his declaration. Stowell further declared that "Elite subsequently began" to perform the "landscaping work contemplated by the contract entered into with [River Park]."

constructed in 2001. Both the original and expanded drive-through lanes were located over a small portion of the easement. Elite's work under the landscaping contract did not include the laying of asphalt, paving, or construction of a canopy at the Chick-fil-A drive-through.

On February 11, 2022, the City sent two emails to the District with the February 4, 2022 Development Review Committee preliminary review projects agenda attached. One of the items on the agenda was the drive-through project which described the project as: proposing to add a second drive-through lane "by removing approximately 15' of landscaping from the setback area along Blackstone Ave." to minimize stacking in the shopping center without removing parking stalls; a new 1,500 square foot canopy to replace the existing smaller one at the drive-through lanes at the building; a new 600 square foot canopy added over the relocated menu board area; a 319 square foot addition to the kitchen area; and an interior kitchen remodel.

On February 28, 2022, after work on the landscaping project began, the District sent a letter to Mindi Moriboho at the City's Development and Resource Management Department regarding the drive-through project application (District's letter). District also sent a copy of the easement. District stated it had reviewed the application for the drive-through project and offered comments concerning it. District was concerned about the drive-through project's impact on its pipeline that traversed the property, noting the District had an exclusive easement. District explained the 36-year-old pipeline was made of "non reinforced monolithic pipe that is easily damaged, extremely prone to leakage and does not meet [the District's] minimum standards for developed (residential, industrial, commercial) parcels or urban areas." District recommended the applicant replace the pipeline in accordance with the District standards for developed parcels and that the applicant enter into an agreement with the District for that purpose.

District also explained that because the existing pipeline was susceptible to tree root intrusion into pipe joints, all trees would need to be located at least 15 feet from the

4.

outside edge of the pipeline to limit possible disruptions, and since no structures were allowed within the District's easement, existing encroachments "shall be removed." District offered general comments about its requirements for the project, including that the District be made a party to all improvement plans which affect its easement and pipeline facilities, including landscaping contracts.

On April 12, 2022, as a direct result of the District's letter, the City issued a stop work notice (also known as a " 'red tag' ") on all construction work, which forced Elite to stop work on the landscaping project.[4] According to Elite's general manager, the red tag was later rescinded, and the project resumed. Elite later issued a change order to River Park which increased the total landscaping project cost by $26,000 for remobilization costs to start and stop work due to the red tag.

On September 20, 2022, a City attorney, Jennifer M. Quintanilla, emailed the District's general counsel, Jeff Boswell, informing the District that no permits were issued for any of the improvements constructed at the property; an application for a landscaping permit was submitted on April 21, 2022, but the application had not been approved; the stop work notice had not been rescinded and the City did not intend to rescind it; and while work had been performed on the property, City approval had not been obtained.

I.      **The Complaint**

On September 1, 2022, River Park filed a complaint against the District, which alleged a single cause of action for intentional interference with contract. River Park alleged it had an existing contract with Elite for replacement of the landscaping on the property, which the District had knowledge of based on the commencement of work on the landscaping project and communications with River Park. River Park further alleged

---

[4]     The stop work notice shows the City inspector issued the notice on April 12, 2022, and the notice advised to call or contact a named individual by April 14, 2022.

that the District intentionally acted to disrupt and interfere with the landscaping contract by sending the District's letter to the City's Development and Resource Management Department to complain about the landscaping project, and as a direct result of the letter, the City issued a red tag against the project that forced Elite to stop work even though its work area impacted a small portion of the easement that was a fraction of the overall project.[5]  As a direct and proximate result of the District's conduct, River Park was damaged in an amount according to proof at trial, but which was expected to exceed $26,000.

## II.     The Special Motion to Strike

### A.      Section 425.16

District filed a special motion to strike under section 425.16.  "A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail."  (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*), citing § 425.16, subd. (b)(1).)  Thus, "[a]nti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has

---

[5]      Although River Park's sole cause of action was for interference with contract, River Park also alleged the District's interference with the landscaping project was independently wrongful as the District never maintained the pipeline or objected when the original landscaping and building were constructed over the easement, and the District demanded the City stop all work on the project even though the easement only affected a small part of the property.  River Park asserted the District's demand to be allowed to review and approve River Park's plans for the landscaping project was beyond its role as an easement holder, and even if the expanded drive-through lane was a structure, the small portion that sat atop the easement did not interfere with the District's use of the pipeline to carry irrigation water.

engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) "If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Ibid*.)

As pertinent here, under section 425.16, an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law…." (§ 425.16, subd. (e)(1)-(2).)

### B.  *District's Motion*

In its memorandum of points and authorities, the District argued that River Park's sole cause of action arose from protected activity because it was based on a statement made before or in connection with an official proceeding authorized by law. District pointed out the only allegedly wrongful act it committed was sending its letter to the City, which River Park alleged caused the City to issue the red tag notice. District contended that because its letter was sent in response to the City's emails notifying it of the drive-through project, the District's letter was a written statement made in connection with an issue under consideration or review in an official proceeding.

District also contended River Park could not meet its burden of showing probable success on the merits because the District's communication to the City was privileged under Civil Code section 47 as code enforcement proceedings are official proceedings authorized by law and reviewable pursuant to a writ of mandamus. District made additional arguments as to why River Park could not show probable success on the merits: (1) the landscaping contract was unenforceable or void based on the District's exclusive perpetual easement; (2) District was privileged to interfere with River Park and Elite's contractual relationship because it acted to protect its own economic interest;

7.

(3) District had the right to review and approve all work performed on the easement; (4) River Park could not limit or terminate the District's easement; and (5) River Park's damages, if any, were caused by its own wrongful actions. Finally, the District asserted it was entitled to its attorney fees and costs in bringing the motion.

### C.  *River Park's Opposition*

In opposing the motion, River Park argued the District could not satisfy its initial burden of establishing the challenged activity arose from protected activity and, even if it had, River Park was likely to succeed on the merits of its claim for intentional interference with contract.

On the first point, River Park contended the District's argument that the complaint arose from protected activity because the District's letter was submitted in an official proceeding was flawed because the items under preliminary review by the Development Review Committee did not include the landscaping project, none of the items referenced in the committee's agenda were part of Elite's contract for the landscaping project, and when the District sent the letter, the landscaping project had already begun. Accordingly, River Park argued the District failed to establish the complaint arose out of a writing made before or in connection with an issue under consideration by an official proceeding authorized by law.

On the second point—likelihood of success of its claim—River Park argued the undisputed evidence showed the elements of an intentional interference with contract claim were established, and the District's defenses were meritless. River Park asserted the District's actions were not privileged under Civil Code section 47 as a communication to a government agency whose function is to investigate and remedy wrongdoing because the District's letter did not complain of code violations or seek investigation or enforcement of any violations. River Park argued the District's other defenses were meritless, as the landscaping contract was a valid enforceable contract, and the defense of justification did not apply.

8.

## D.  District's Reply

In reply, the District asserted River Park's argument on the first prong—that the letter was not sent as part of the permitting process for the landscaping project—was farcical as the evidence showed the District's letter was sent in response to the City's request for comments regarding the Development Review Committee's preliminary review projects agenda, which is an official proceeding authorized by law.

On the second prong, the District argued its letter was absolutely privileged under Civil Code section 47 as it was directly related to an issue under review or investigation by the City, and clearly provided in the City's decisionmaking capacity.  District also addressed its other arguments concerning the second prong, and noted it never requested a complete stop work order for the entire project and it was the City's decision to issue the stop work notice.

## E.  Hearing and Ruling

Following a hearing on the motion to strike, the trial court granted the motion and the District's request for attorney fees and costs, and issued a notice that the complaint was stricken  The trial court found the District met its burden of showing the District's letter was protected activity under section 425.16, subdivision (e)(1) and (2), since it was a statement made in connection with an issue under consideration by an official proceeding.[6]  The trial court rejected River Park's argument that the letter was not protected activity because the City was considering only whether to grant a permit for the drive-through project.  The trial court noted the City clearly requested comments regarding the drive-through project, the District's letter primarily addressed the expansion of the drive-through and not the landscaping project, and the letter did not demand or request the City issue a stop work order or red tag notice for the project.

---

[6]    District concurrently filed a demurrer to the complaint, which the trial court overruled as moot in light of its ruling on the special motion to strike.

9.

Accordingly, the trial court found the letter was protected activity within the meaning of section 425.16.

The trial court further found River Park could not meet its burden that it had a probability of prevailing on its claim for intentional interference with contract since the statement at the core of the complaint was absolutely privileged under Civil Code section 47. The trial court explained the District's letter was made in an official proceeding in connection with an issue under consideration as: (1) the City planning development department was considering whether to approve or deny the construction permit for the drive-through expansion on the District's easement; (2) the City solicited comments from the District about the proposed project; and (3) District sent its letter to provide comments and voice its concerns about whether the construction might damage the existing pipeline on its easement. The trial court found the statements were made to assist the City with its investigation into whether a permit should issue and its decisionmaking process concerning the proposed project, and because the letter was absolutely privileged, River Park could not show a probability of prevailing on its claim.[7]

## DISCUSSION

As stated above, anti-SLAPP motions under section 425.16 are evaluated through a two-step process. The moving defendant bears the burden of establishing that the challenged claims arise from protected activity, and if the defendant meets that burden, the plaintiff must establish there is a probability that its claims will prevail. (See *Park*, *supra*, 2 Cal.5th at p. 1061; *Monster Energy*, *supra*, 7 Cal.5th at p. 788.)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the

---

[7] Since the letter was absolutely privileged, the trial court declined to address the other arguments raised in the motion to strike.

10.

pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.]  We do not, however, weigh the evidence, but accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law."  (*Park*, *supra*, 2 Cal.5th at p. 1067.)

### *River Park's Claims Arise from Protected Activity*

District's anti-SLAPP motion was made under section 425.16, subdivision (e), which defines protected activity as including:  "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law …."  (§ 425.16, subd. (e).)

Although River Park disputed the issue in its opposition to the motion and continues to dispute it on appeal, it is apparent from the record that it is suing the District for statements made in connection with issues under consideration by the City, that is, whether to approve the drive-through project.  The District's letter, upon which River Park's claim for intentional interference with contract is based, directly implicated that issue.  (See *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 194–195 [" 'arising from' " prong satisfied where allegedly false site maps were submitted to the city in connection with its permitting process as part of development of defendant's property], disapproved on another point in *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396, fn. 11; *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 272 [first prong satisfied where breach of contract cause of action arose from statements made and plans submitted to planning commission and city council].)

River Park's argument that the District's letter is not protected activity because the City was not considering the landscaping project is meritless.  While the City did not

request comments about the landscaping project, it clearly requested comments regarding the drive-through project. Despite River Park's claim that the District complained to the City about the landscaping project and claimed it was not told about the construction, the District's letter never mentioned the landscaping project or complain about it, and the letter did not state the District was not told about the construction. Rather, the District's letter clearly was directed toward the drive-through project, which was an issue under the City's active consideration. The only mention of landscaping in the letter was the District's concern about the potential for tree roots to grow into the pipe and block the water flow, which required "all trees" to be located at least "15 feet from the outside edge of the pipeline to limit possible disruptions," and the District's general comment that no trees would be allowed within the easement and "any trees to be planted in the proximity of the pipeline shall maintain a distance of 15 feet from edge of pipe." The letter never demanded or requested that the City issue a stop work notice or red tag for either the landscaping or drive-through project.

The focus of our inquiry into whether River Park's claim arises from protected speech or petitioning activity "is on the principal thrust or gravamen of the causes of action, i.e., the allegedly wrongful and injury-producing conduct that provides the foundation for the claims." (*Castleman v. Sagaser* (2013) 216 Cal.App.4th 481, 490–491.) Since the allegedly wrongful and injury-producing conduct on which River Park's claim is based is the District's letter that was provided in connection with an issue under the City's consideration or review, the District met its burden to show the complaint arose from protected activity.

### Probability of Success on the Merits

As we explained above, if the moving defendant establishes that the challenged claims arise from protected activity, "the plaintiff must then demonstrate its claims have at least 'minimal merit.' " (*Park*, *supra*, 2 Cal.5th at p. 1061.) The plaintiff must " 'demonstrate that each challenged claim based on protected activity is legally sufficient

12.

and factually substantiated,' " and the court must " 'determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.' " (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 768 (*Laker*).) "The plaintiff must demonstrate this probability of success with admissible evidence," and may not rely solely on the complaint. (*Ibid.*) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

District raised several arguments in the trial court to support its view that River Park could not carry this burden, which River Park addresses on appeal.[8] District's principal contention, which the trial court accepted, was that River Park could not prevail on its intentional interference with contract claim because the claim relies entirely on statements which are absolutely privileged as they were made "in [an] … official proceeding authorized by law." (Civ. Code, § 47, subd. (b).)

Regarding the absolute privilege under Civil Code section 47, subdivision (b) (hereafter Civil Code section 47(b)), our Supreme Court has explained that "[s]ection 47 [of the Civil Code] establishes a privilege that bars liability in tort for the making of certain statements. Pursuant to section 47(b), the privilege bars a civil action for damages for communications made '[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing

---

[8]     As we previously set out, the District's arguments included, in addition to the application of the absolute litigation privilege, that the landscaping contract was invalid and unenforceable, and it was privileged to interfere with the landscaping contract. Because we determine the relevant statements are absolutely privileged by Civil Code section 47, subdivision (b)(3), we do not reach the merits of these arguments.

writs of mandate],' with certain statutory exceptions that do not apply to the present case. The privilege established by this subdivision often is referred to as an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*); see *Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 333 [noting that the privilege "immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution"].)

The principal purpose of the absolute privilege is to afford litigants and witnesses "the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213.) The privilege "promotes the effectiveness of judicial proceedings by encouraging 'open channels of communication and the presentation of evidence' in judicial proceedings." (*Ibid.*) "A further purpose of the privilege 'is to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.' [Citations.] Such open communication is 'a fundamental adjunct to the right of access to judicial and quasi-judicial proceedings.' " (*Ibid.*) "Since the 'external threat of liability is destructive of this fundamental right and inconsistent with the effective administration of justice' [citation], courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings." (*Ibid.*)

"By the terms of the statute, statements that are made in quasi-judicial proceedings, or 'any other official proceeding authorized by law' (§ 47(b)), are privileged to the same extent as statements made in the course of a judicial proceeding." (*Hagberg*, *supra*, 32 Cal.4th at p. 362.) The official proceeding privilege applies to "[a]ny publication made in a city planning commission or city council proceedings … though the proceedings are not strictly judicial." (*Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 488;

14.

see *Cayley v. Nunn* (1987) 190 Cal.App.3d 300, 303 [the absolute privilege "applies to local city council proceedings"]; *Whelan v. Wolford* (1958) 164 Cal.App.2d 689, 691–692, 694 [official proceeding privilege applies to written petitions of protect against plaintiffs' application for a use variance filed with city planning commission].)

" 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) The privilege " 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Ibid.*) "Thus, the official proceeding privilege extends to communications intended to report wrongdoing or trigger an investigation.' " (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 282, citing *Hagberg*, *supra*, 32 Cal.4th at pp. 362, 363, 368.) "Any doubt as to whether the privilege applies is resolved in favor of applying it." (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)

If the challenged action falls within the official proceeding privilege, the plaintiff cannot establish it has a reasonable probability of prevailing on a claim based on that action and an anti-SLAPP motion is properly granted. (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1065.) In the anti-SLAPP context, the privilege presents "a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) "While the defendants bear the burden of proof on any affirmative defense, [the plaintiff] retains the burden to show, under the second step of the anti-SLAPP analysis, that he has a probability of prevailing on the merits of the claim." (*Laker*, *supra*, 32 Cal.App.5th at p. 769.)

Guided by the foregoing principles, we conclude the District's letter falls under the official proceedings privilege because it is directly connected to the proceedings before municipal entities examining the drive-through project. The City's Development

Review Committee invited comments for its preliminary review of the proposed drive-through project. District sent the letter in response to this invitation, in which it provided concerns and comments about how the proposed project might affect its easement and the District's requirements concerning the project to protect its easement. Since the letter was submitted as part of an official proceeding, namely, the City's review of the proposed project, to provide comments concerning the proposed project, the District's letter was absolutely privileged.

River Park contends the District's letter is not privileged because the District did not seek an investigation or decision regarding any wrongdoing by River Park, citing *Klem v. Access Ins. Co.* (2017) 17 Cal.App.5th 595 (*Klem*). There the defendant insurance company filed a notice of retention with the Department of Motor Vehicles (DMV) that advised the plaintiff's vehicle, which had been in an accident and was a total loss, was a salvage vehicle that plaintiff had retained. (*Id.* at pp. 602, 603.) The plaintiff sued the insurer for slander of title and unfair business practices, alleging that because he repaired the vehicle, it was not a total loss salvage and the insurer's submission of the notice to the DMV was false and a violation of various statutes. (*Id.* at p. 604.) The insurer filed a special motion to strike under section 425.16, arguing the notice was absolutely privileged as a report to a government agency. The trial court denied the motion. (*Klem*, at pp. 604–605.)

The appellate court affirmed, holding that while filing the notice was protected activity, it was not absolutely privileged because the insurer failed to establish its communication was made prior to an official proceeding. (*Klem*, *supra*, 17 Cal.App.5th at pp. 609–611, 613.) The appellate court noted that in *Hagberg*, the California Supreme Court "provided significant guidance on communications that are made in anticipation of official proceedings" and explained that the critical question was the aim of the communication and whether it was made in anticipation of or designed to prompt official proceedings. (*Klem*, at p. 613.) Thus, the Supreme Court concluded in *Hagberg* that the

privilege " 'applies to complaints to governmental agencies requesting that the agency investigate or remedy wrongdoing.' " (*Klem*, at p. 613.) Applying these principles in *Klem*, the appellate court determined that sending the notice was not absolutely privileged because the insurer did not contend or establish that the DMV acts in an investigatory or decisionmaking capacity in connection with the notice or that the notice was intended to trigger such activity, and its submission did not result in an investigation. (*Id.* at p. 615.) In rejecting the insurer's argument that its intent in submitting the notice was irrelevant, the appellate court explained that where "there is no existing proceeding, there must be *some* indication the communication was aimed at bringing about one." (*Id.* at pp. 615–616.)[9]

*Klem*, however, is distinguishable, as an official proceeding did not exist when the insurer transmitted the notice to the DMV. In that situation, to be privileged, the communication at issue must have been offered in anticipation of an official proceeding or designed to prompt one, such as by requesting the agency to investigate or remedy wrongdoing. (*Klem*, *supra*, 17 Cal.App.5th at pp. 613, 615.) In contrast here, there was an existing official proceeding—the City's review of the proposed drive-through project—which involved the City's investigatory and decisionmaking authority, namely, whether it should issue a permit to allow the construction of the expanded drive-through on River Park's property. The statements in the District's letter were made to assist the

---

[9] In contrast to *Klem*, the appellate court held in *Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, that a husband's report to the DMV regarding his wife's drug usage and its possible impact on her ability to safely operate a motor vehicle fell within the privilege for quasi-judicial proceedings. (*Id.* at p. 1303.) In so holding, the appellate court explained the privilege applied because it existed "to protect citizens from the threat of litigation for communications to government agencies whose function it is to investigate and remedy wrongdoing," and the DMV was authorized to investigate whether a person's license should be suspended and revoked, and any proposed decision to suspend or revoke a license is subject to administrative proceedings and court review. (*Ibid.*)

City with its investigation and decisionmaking process. Since there was an ongoing official proceeding, it was not necessary for the District to complain of code violations or seek an investigation, as River Park contends. Rather, the District's statements made in connection with the City's active consideration of whether to issue a permit for the proposed construction of the drive-through are absolutely privileged. (*Pettitt v. Levy*, *supra*, 28 Cal.App.3d at p. 488 ["[a]ny publication made in a city planning commission" proceeding is absolutely privileged].) As a result, the reasoning of *Klem* does not apply here and the letter was absolutely privileged.

Because the District's communication that River Park complains of is absolutely privileged under Civil Code section 47(b), River Park cannot establish a probability of prevailing on the merits of its claim. Therefore, the trial court properly granted the District's motion to strike the complaint under section 425.16.

## DISPOSITION

The January 13, 2023 order granting the District's anti-SLAPP motion and notice of striking of filed documents are affirmed. District is awarded its costs on appeal.


                                  DE SANTOS, J.

WE CONCUR:


DETJEN, Acting P. J.


SMITH, J.

18.